# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 19-0177-01 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| JASON MATHEW PORTERFIELD | MAGISTRATE JUDGE HORNSBY |

## <u>MEMORANDUM RULING</u>

Before the Court is a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) filed by Defendant Jason Mathew Porterfield ("Porterfield"). *See* Record Document 43. Porterfield filed supplemental memoranda in support of his motion. *See* Record Documents 56, 60, 61, 62, & 66. Additionally, the Court received letters of reference filed on Porterfield's behalf. *See* Record Documents 47, 48, 53, 57, 63, 64, 65, & 69. The Government opposes Porterfield's motion and argues Porterfield is not entitled to any relief.[1] *See* Record Document 58.

For the following reasons, Porterfield's motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) [Record Document 43] is **DENIED**. To the extent Porterfield's

---

[1] Stephen Porterfield ("Stephen"), who asserts Porterfield is his nephew, claims to be "deeply troubled" by the "double standards and inequities" presented by this Court's decision to set responsive deadlines for the Government. *See* Record Document 57 at 1. Stephen avers the Court improperly granted the Government a "long extension" to respond to Porterfield's motion. *Id.* Notwithstanding the fact that a non-party may not raise legal issues for the Court to consider or resolve, the Court notes no such extension was granted, and the Government timely complied with all deadlines set by this Court. *See* Record Documents 44, 54, 55, & 58. The Court finds no double standard or inequity present in its decision to set these deadlines or to allow the Government to oppose Porterfield's motion.

motion can be construed as raising claims for relief under other statutes, as discussed *infra*, relief based on any such claims is also **DENIED**. Finally, to the extent Porterfield's supplemental responses [Record Documents 56, 60, 61, & 62] can be interpreted as raising claims for relief, such motions are also **DENIED**.

## Background[2]

Porterfield's conviction arose from a narcotics investigation conducted by law enforcement officers. *See* Record Document 27-2 at 1. On or about March 18, 2019, officers were surveilling a Holiday Inn Express and Suites in Shreveport, Louisiana and observed Porterfield exiting the hotel. *See id.* The officers identified themselves to Porterfield and told him he was not under arrest at that time. *See id.* They advised Porterfield of his *Miranda* rights, and Porterfield consented to a search of his hotel room for illegal narcotics. *See id.* at 1-2. During the search, "[o]fficers found approximately 112 grams of methamphetamine packaged in various gram quantities, packaging materials, digital scales, a drug ledger, . . . $3,831 in cash[,] . . . one gram of marijuana[,] and 249 dosage units of Xanax pills, along with other drug paraphernalia." *Id.* at 2. Porterfield told the officers he had been selling illegal narcotics for approximately six months. *See id.* Lab results of the seized narcotics indicated a total weight of 76.9 grams. *See id.*

On May 22, 2019, a federal grand jury indicted Porterfield on one count of possession with intent to distribute fifty grams or more of methamphetamine, in violation

---

[2] The Court derives the factual background from the factual basis to which Porterfield pled guilty. *See* Record Document 27-2.

of 21 U.S.C. §§ 841(a)(1) and (2). *See* Record Document 1. On September 19, 2019, Porterfield pleaded guilty. *See* Record Documents 25 & 27.

The Presentence Investigation Report ("PSR") attributed 2.72 kilograms of methamphetamine to Porterfield based on the seized methamphetamine and purchases admittedly made on the "dark web." Record Document 38 ¶¶ 14-15, 21. With a total offense level of 33 and a criminal history category of VI, the PSR calculated Porterfield's Guidelines range to be 235 to 293 months. *See id.* ¶ 84. Porterfield objected to the PSR, arguing, *inter alia*, that the 2.72 kilograms of methamphetamine attributed to him "should be treated as a quantity of a 'mixture or substance' of methamphetamine." Record Document 29 at 2. Porterfield alternatively argued this Court should only attribute to him the 79.6 grams of seized methamphetamine actually tested by the laboratory. *See id.*

On January 29, 2020, Porterfield proceeded to sentencing. *See* Record Document 33. At sentencing, the Court found Porterfield's PSR "overstated his criminal history" and "orally amended the [PSR] to reflect a Base Offense Level of 32 and a Total Offense Level of 29." *Id.* This amendment resulted in a recalculated Guidelines range of 151 to 188 months. *See* Record Document 37 at 1. Upon motion by Porterfield, the Court varied downwards from the recalculated Guidelines range and sentenced Porterfield to 130 months imprisonment and five years of supervised release. *See id.* at 2-4; *see also* Record Document 36. The Court selected its sentence after considering the factors contained in 18 U.S.C. § 3553(a) pertaining to Porterfield's criminal history, personal characteristics, drug addiction, overstated nature and extent of non-violent criminal history, involvement in the instant offense, and for reasons otherwise orally stated. *See* Record Document 37

3

at 4. The Court recommended that Porterfield participate in the Residential Drug Abuse Program ("RDAP") and/or any other available drug treatment programs. *See* Record Documents 33 & 36 at 2. Porterfield did not appeal his conviction or sentence. *See* Record Document 40.

On June 3, 2024, Porterfield filed the instant motion pursuant to 18 U.S.C. § 3582(c)(1)(A). *See* Record Document 43. Porterfield argues relief is warranted because (1) he did not receive a reduction under United States Sentencing Commission Amendment 821 ("Amendment 821"); (2) he suffers from both mental and physical medical conditions that the BOP has not treated; (3) his partner suffers from various medical conditions and requires care; (4) he "has suffered a variety of abuses while in prison;" (5) a sentencing disparity exists between him and other defendants convicted of the same offense; (6) the Court did not depart downward based on diminished capacity; (7) he has a history of childhood trauma and learning disabilities; (8) the Court did not consider placing him in a drug treatment facility; (9) the Court did not depart downward based on aberrant behavior; (10) the Court did not consider the "Standardized Prisoner Assessment for Reduction in Criminality" factors ("SPARC-13") at sentencing; (11) his counsel was ineffective; (12) the Government forced him to cooperate; (13) his guilty plea was involuntary; (14) the Bureau of Prisons ("BOP") is denying his rights under the First Step Act by housing him over 1,000 miles from his home and inaccurately counting his time credits; (15) he suffers under current prison conditions; (16) the BOP is violating his religious rights; (17) the BOP has prevented him from accessing prison programming and educational opportunities; and (18) he has rehabilitated himself while in prison and

has a home plan in place for his release. *Id.*; *see also* Record Documents 62 & 66. Porterfield moves the Court for release or, in the alternative, home confinement as a condition of supervised release until his current release date. Record Document 43 at 22.

The Government contends Porterfield is not entitled to compassionate release because he did not exhaust his administrative remedies before seeking relief with this Court, raises claims that are not cognizable grounds for compassionate release, and fails to demonstrate extraordinary and compelling circumstances warranting relief. *See* Record Document 58. The Government additionally argues the § 3553(a) factors independently preclude relief. *See id.* Finally, the Government asserts Porterfield is ineligible for relief under Amendment 821. *See* Record Document 54.

## **Law & Analysis**

### I.    18 U.S.C. § 3582(c)(1)(A)

While a court generally "may not modify a term of imprisonment once it has been imposed," several exceptions to this principle of finality exist. 18 U.S.C. § 3582(c). Relevant here, a court may reduce an inmate's sentence when the inmate demonstrates that "extraordinary and compelling reasons" justify a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). The inmate bears the burden of showing why a reduction is justified. *See United States v. Clark*, 451 F. Supp. 3d 651, 656 (M.D. La. 2020).

Before an inmate can petition for § 3582 relief from the district court, the inmate must first exhaust his administrative remedies. *See* 18 U.S.C. § 3852(c)(1)(A). Relief is justified where an inmate can demonstrate the existence of a condition identified in § 3582(c)(1)(A) (e.g., extraordinary and compelling circumstances), "show that

compassionate release is consistent with applicable policy statements from the Commission[,]" and "convince the district judge to exercise discretion to grant the motion after considering the § 3553(a) factors." *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).

### A. Exhaustion of Administrative Remedies

Historically, only the Director of the Bureau of Prisons ("BOP") could file a motion to reduce an inmate's sentence. *See* First Step Act of 2018, PL 115-391, § 603(b), 132 Stat. 5193, 5239. After the First Step Act of 2018, however, a court may consider compassionate release motions filed directly by inmates. *See* 18 U.S.C. § 3852(c)(1)(A). But before an inmate pursues compassionate release through a district court, he must first exhaust all administrative remedies or wait for a lapse of thirty days from the time the warden receives his request. *See id.*

The district court can only modify a sentence after the defendant has exhausted administrative remedies. *See id.* This mandatory language includes no exceptions, equitable or otherwise. *See Martinez-Guevara v. Garland*, 27 F.4th 353, 361 (5th Cir. 2022) (citing *Ross v. Blake*, 578 U.S. 632, 639 (2016)) ("Mandatory exhaustion regimes brook no exceptions."). Generally, "to exhaust h[is] administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in h[is] motion." *United States v. Dodd*, No. 13-CR-182, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020).

Here, Porterfield's original motion did not include proof that his administrative remedy form, commonly known as a BP-9, was presented to and received by the BOP.

6

*See* Record Document 43. On January 14, 2025, the Court issued a minute entry ordering Porterfield to file proof that he submitted a BP-9. *See* Record Document 59. On February 3, 2025, Porterfield filed his response to that minute entry, contending his original BP-9 "was misplaced or misfiled during a number of staff transitions" at his prison. *See* Record Documents 61 at 1 & 61-1 at 3. Porterfield provided a "replacement copy" of his BP-9 dated January 17, 2025. Record Document 61-1 at 1-4. On that form, Porterfield sought compassionate release from the warden of his facility based on Amendment 821, his health, the health of his partner, and his placement in a prison over 1,000 miles from his home. *See id.* at 2. The warden denied Porterfield's request on February 6, 2025. *See* Record Document 62-1 at 1.

A review of Porterfield's replacement BP-9 demonstrates Porterfield failed to exhaust his administrative remedies before seeking relief in this Court. Not only was this BP-9 filed *after* his original motion, but this BP-9 also does not seek relief on all the same grounds enunciated by Porterfield in his motions. *See Dodd*, 2020 WL 7396527, at *2 (explaining a prisoner must present the same grounds to the BOP to exhaust administrative remedies). Thus, Porterfield did not originally exhaust his administrative remedies prior to filing the instant motion.

Nevertheless, Porterfield did request relief from the warden for his claims premised on Amendment 821, his health, the health of his partner, and his placement in a prison over 1,000 miles from his home. If the Court denied his motion for failure to exhaust his administrative remedies, he would simply need to refile his motion with the Court to exhaust on those grounds. Further, if, as Porterfield claims, he did file a BP-9 before

seeking relief with this Court but said form has been misplaced, then he would have properly exhausted his administrative remedies. And, in any event, Porterfield would simply need to file a BP-9 on any additional grounds not raised in his original BP-9 and refile his motion with this Court to properly exhaust his administrative remedies as to those claims.

Therefore, in the interests of justice and judicial efficiency, the Court shall assume *arguendo* that Porterfield exhausted his administrative remedies and will consider the merits of his arguments.

### B. Extraordinary and Compelling Circumstances

To assist courts in determining what constitutes an extraordinary or compelling circumstance, the Sentencing Commission provides a blueprint elucidating circumstances that may justify reducing a prison term. On November 1, 2023, the United States Sentencing Commission amended the Guidelines to provide additional instruction concerning compassionate release. For the first time since the First Step Act was passed, the Commission outlined specific reasons that would be considered "extraordinary and compelling" under 18 U.S.C. § 3582(c)(1)(A)(i). The six categories now outlined in the Guidelines are: (1) defendant's medical condition, (2) defendant's age, (3) family circumstances, (4) whether defendant has been a victim of abuse during custody, (5) other reasons, and (6) an extraordinarily long sentence. *See* U.S.S.G. § 1B1.13(b).

Porterfield raises several arguments in his motion that he argues warrant compassionate release, including (1) Amendment 821, (2) his medical conditions, (3) his partner's medical conditions, (4) abuse in custody, (5) sentencing disparity, (6)

diminished capacity, (7) his childhood trauma and learning disabilities, (8) failure to consider placing him in a drug treatment facility, (9) aberrant behavior, (10) the SPARC-13 factors, (11) ineffective assistance of counsel, (12) cooperation, (13) involuntary guilty plea, (14) the BOP's denial of his First Step Act rights, (15) prison conditions, (16) the BOP's violation of his religious rights, (17) the BOP preventing his access to prison programming and educational opportunities, and (18) rehabilitation and a home plan. *See* Record Documents 43, 62, & 66.

At the outset, the Court notes two concerning ambiguities in Porterfield's motion. First, Porterfield does not make an explicit § 3582 analysis. More specifically, he does not direct the Court to any of the specific Guidelines provisions outlining the requirements for compassionate release. The Court has done its best to analyze Porterfield's arguments under the relevant Guidelines provision. Second, the Court cannot discern from Porterfield's motion whether he proffers such claims solely to demonstrate extraordinary and compelling circumstances under § 3582(c)(1)(A) or if he intends to raise claims for relief under other statutes that could offer collateral relief. For example, an ineffective assistance of counsel claim would generally be raised under 28 U.S.C. § 2255, and Porterfield cites the standard for ineffective assistance of counsel claims raised under that statute. *See* Record Document 43 at 12-13. However, Porterfield does not cite § 2255 in his motion.

Porterfield is a *pro se* defendant, and *pro se* pleadings are to be liberally construed. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995). Therefore, out of an abundance of caution, the Court will proceed as follows. The Court will first consider whether each

9

of Porterfield's claims constitutes an extraordinary and compelling circumstance under § 3582(c)(1)(A). If a claim is not cognizable under § 3582(c)(1)(A) or does not entitle Porterfield to relief under that statute, the Court will so note. If that claim would have been more properly raised under other statutes, such as § 2255, the Court will consider whether Porterfield would be entitled to relief from this Court under that statute.

### i. Amendment 821

Porterfield contends he did not "receive[] the 2 point reduction off his sentence due to being a first time offender." Record Document 43 at 19. The Court construes this claim as seeking a sentence reduction pursuant to Amendment 821. Although Porterfield brings this claim under 3582(c)(1)(A), this claim is more properly considered under 3582(c)(2), which allows courts to reduce a term of imprisonment based on a retroactive amendment to the Guidelines. Therefore, the Court considers Porterfield's claim as a request for relief under 3582(c)(2).

Amendment 821 became effective November 1, 2023. Part B, Subpart 1 of Amendment 821 added U.S.S.G. § 4C1.1 to the Guidelines. *See* U.S.S.G. Supp. App. C, Amendment 821, Part B, Subpart 1 (Nov. 2023). This provision authorizes a two-offense-level decrease for certain zero-point offenders. *See* U.S.S.G. § 4C1.1. To be eligible for this adjustment, a criminal defendant must meet several criteria, including not receiving any criminal history points from Chapter Four, Part A. *See id.* The Sentencing Commission designated Part B, Subpart 1 retroactively applicable and authorized eligible defendants to seek a discretionary sentence reduction under § 3582(c). *See* U.S.S.G. § 1B1.10.

In *Dillon v. United States*, 560 U.S. 817 (2010), the Supreme Court promulgated a two-step analysis for applying retroactive Guidelines amendments. First, the Court must "follow the Commission's instructions in § 1B1.10 to determine the [defendant's] eligibility for a sentence modification and the extent of the reduction authorized." *Id.* at 827. Second, the Court must "consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction . . . is warranted in whole or in part under the particular circumstances of the case." *Id.*

Here, the inquiry ends at the determination of Porterfield's eligibility. Porterfield is ineligible for a sentence reduction based on Amendment 821. Although Porterfield contends he was a first time offender, that characterization is inaccurate. Porterfield received criminal history points under Chapter 4, Part A of the Guidelines.[3] *See* Record Document 38 ¶¶ 39-44. Because Porterfield does not satisfy the eligibility criteria for being considered a zero-point offender under Part B, Subpart 1 of Amendment 821, his Guidelines range would remain the same. Therefore, Porterfield is not eligible for relief under Amendment 821. Any § 3582(c) claim predicated on Amendment 821 consequently fails.

### ii. Porterfield's Medical Conditions

Porterfield argues his medical conditions warrant compassionate release. *See* Record Document 43 at 7-9, 15. Porterfield claims he suffers from the following medical

---

[3] Porterfield received criminal history points under Chapter 4, Part A of the Guidelines for misdemeanor theft, possession of drug paraphernalia, possession of a Schedule II controlled dangerous substance, theft, distribution of a Schedule II controlled dangerous substance, and simple possession of methamphetamine. *See* Record Document 38 ¶¶ 39-44.

conditions: severe depression, anxiety, chronic asthma, attention deficit hyperactivity disorder ("ADHD"), migraines, chronic allergies, intestinal cramps, chronic fatigue syndrome, constipation, congestive heart disease, and low testosterone. *See id.*; *see also* Record Document 61-1 at 2. Porterfield has received treatment from the prison infirmary for his asthma. *See* Record Document 43 at 15. However, he alleges he has not received mental health treatment while incarcerated and needs to be released to "get the medical and mental help he needs." *Id.* Porterfield argues that prison conditions, the COVID-19 pandemic, and the death of his mother exacerbated his mental illness. *See id.* at 7-8.

The Court construes Porterfield's motion as seeking relief based on medical conditions that constitute extraordinary and compelling circumstances. *See* U.S.S.G. §§ 1B1.13(b)(1)(B)-(C).[4] The Guidelines provide that a defendant's medical circumstances may be extraordinary and compelling if:

> (B) The defendant is—
>
> (i) suffering from a serious physical or medical condition,
>
> (ii) suffering from a serious functional or cognitive impairment, or
>
> (iii) experiencing deteriorating physical or mental health because of the aging process
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which he or she is not expected to recover.

---

[4] Porterfield does not argue he suffers from a terminal illness or that he is currently being affected by or at imminent risk of being affected by an ongoing outbreak of infectious disease or ongoing public health emergency because of his conditions. Although Porterfield briefly mentions COVID-19, he does so only to show that prison conditions exacerbated his mental health, and he does not specifically argue he needs relief because of COVID-19 or proffer any evidence to that effect. *See* Record Document 43 at 7-8.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. §§ 1B1.13(b)(1)(B)-(C). Thus, to be eligible for relief, Porterfield must show that either (a) his medical conditions substantially diminish his ability to provide self-care while incarcerated, and he is not expected to recover from those conditions; or (b) his medical conditions require long-term or specialized medical care that the prison is not providing, and he is at "risk of serious deterioration in health or death." *Id.*

Porterfield has not met this burden of showing that his health conditions rise to this level. Porterfield did not provide the Court with medical records supporting that he suffers from the conditions he alleges. The only evidence of Porterfield's medical conditions is found in the PSR, which supports his diagnoses of ADHD and depression but does not explain the severity of those conditions. *See* Record Document 38 ¶ 69. Without Porterfield's medical records, the Court cannot evaluate the merits of Porterfield's claims. *See United States v. Vigers*, No. 05-CR-20056-01, 2021 WL 2930860, at *3 (W.D. La. July 12, 2021) ("[The defendant] has not provided medical records to substantiate his medical condition . . . . For this reason alone, the Court will deny [the defendant's] request."); *United States v. Pearce*, No. 19-CR-0088, 2022 WL 992738, at *3 (N.D. Tex. Apr. 1, 2022) ("[The defendant] does not provide any medical records to substantiate his medical conditions. . . . Without these records, the Court is unable to accurately evaluate his arguments and must DENY his motion.") (emphasis removed); *United States v. Moreno*, No. 16-CR-0302, 2021 WL 389829, *3 (N.D. Tex. Feb. 4, 2021) ("Absent proof of these

conditions, the Court declines to find that they are extraordinary and compelling circumstances warranting [the defendant's] release.").

Even if the Court assumes *arguendo* that Porterfield can provide medical records to substantiate his conditions, the Court further finds his medical conditions are not extraordinary and compelling. Accepting his contentions as true, Porterfield's anxiety causes him to bite his fingernails and clip his toenails "down to the quick, bloody and sore," sometimes to the point where "he cannot walk;" his ADHD and depression have gone untreated; "[h]e has gone multiple days at a time when he will sleep 18-20 hours . . . [;]" and his legs, ankles, and feet sometimes "swell up to a tremendous size" because of his congestive heart disease. Record Document 43 at 7-8, 15. The Court acknowledges Porterfield's alleged conditions can be serious. But while these conditions may occasionally interfere with Porterfield's ability to participate in daily activities, they do not rise to the level of extraordinary and compelling circumstances warranting relief.

First, Porterfield's representations do not suggest his conditions prevent him from caring for himself. For example, Porterfield has not shown how these conditions interfere with his ability to receive and eat meals, participate in daily activities, or otherwise provide for his own basic needs. Notably, despite his conditions, Porterfield has been able to work for UNICOR and participate in prison programming. *See id.* at 16. Thus, Porterfield has not demonstrated that his conditions substantially diminish his ability to perform self-care. *See United States v. Rivas*, 833 F. App'x 556, 559 (5th Cir. 2020) (finding the district court did not err in relying on the warden's report, which provided that the defendant was "able to independently attend to the activities of his daily life, despite his multiple

14

chronic medical conditions," when denying § 3582 motion) (internal quotation marks omitted); *United States v. Wagner*, No. 18-CR-155, 2025 WL 1090973, at *6-7 (E.D. Tex. Apr. 7, 2025) (finding the defendant's conditions did not diminish his ability to provide self-care where he was "fully independent and [was] being housed in general population . . . [, and] he ha[d] no difficulty walking to and from the housing unit to go for meals or to seek medical attention").

Second, Porterfield has not shown the prison cannot provide the level of care he allegedly needs. Porterfield repeatedly asserts that the BOP has not treated his medical conditions while he has been in custody, *see e.g.* Record Document 66 at 2-3, but he provides the Court with no evidence, medical or otherwise, to support that his conditions require long-term or specialized care or that his medical conditions are deteriorating without that care. *See United States v. Rey-Carrillo*, No. 17-CR-121, 2025 WL 296609, at *5 (E.D. Tex. Jan. 24, 2025) ("[C]ourts have repeatedly rejected as insufficient general complaints about health issues without medical proof of . . . how [the condition] is deteriorating.").

In sum, Porterfield has not met his burden of demonstrating that his medical conditions are extraordinary and compelling circumstances warranting relief. Therefore, this claim under § 3582(c)(1)(A) fails.[5]

---

[5] If Porterfield intended to raise an independent civil action premised on the BOP's failure to provide him adequate medical care, he would need to initiate any such action through a formal civil complaint in the proper forum and venue.

### iii. Porterfield's Family Circumstances

Porterfield argues his partner's medical conditions warrant compassionate release. *See* Record Document 43 at 14-15. Specifically, Porterfield contends he "needs to be at home with his fiance [sic] and life partner . . . to help care for [her] basic needs . . . ." *Id.* at 14. He further asserts his partner "is [his] only living relative."[6] *Id.* Porterfield claims his partner suffers from the following medical conditions: atrial fibrillation, high blood pressure, high cholesterol, chronic back pain (caused by osteoporosis, osteoarthritis, degenerative disc disease, and arthritic bone spurs), diabetes, post-traumatic stress disorder, severe depression, and bipolar disorder. *See id.*

The Court construes Porterfield's motion as seeking relief based on family circumstances that constitute extraordinary and compelling circumstances. *See* U.S.S.G. § 1B1.13(b)(3). U.S.S.G. § 1B1.13(b)(3)(B) provides that "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver" constitutes an extraordinary and compelling circumstance. U.S.S.G. § 1B1.13(b)(3)(D) likewise provides that extraordinary and compelling circumstances are present where a defendant can establish "that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving . . . an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such . . . individual."

---

[6] The Court doubts the accuracy of Porterfield's representation that his partner is his only living relative. Stephen claims Porterfield is his nephew and further states that he is Porterfield's "only surviving relative." Record Documents 57 at 1 & 65 at 2. Porterfield's partner also refers to Porterfield's cousin in her letter of reference. *See* Record Document 47 at 1.

The BOP previously defined "incapacitation" for an inmate's spouse or registered partner to mean that the spouse or registered partner has:

> Suffered a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse or registered partner is completely disabled, meaning that the spouse or registered partner cannot carry on any self-care and is totally confined to a bed or chair; or
>
> A severe cognitive deficit (e.g., Alzheimer's disease or traumatic brain injury that has severely affected the spouse's or registered partner's mental capacity or function), but may not be confined to a bed or chair.

*See* Federal Bureau of Prisons, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)* (Jan. 17, 2019), https://www.bop.gov/policy/progstat/5050_050_EN.pdf. For relief to be justified on this ground, Porterfield must establish both that his partner is incapacitated and that he is the only available caregiver for said partner. "[C]ourts require specific evidence of the defendant's need to serve as a primary caretaker." *United States v. Villegas*, No. 13-CR-200, 2025 WL 350229, *5 (E.D. Tex. Jan. 30, 2025). As such, the defendant must not only "prove with medical support that the family member is incapacitated" but must also "demonstrate why they are the only available caregiver for that family member." *Id.*

Porterfield has not met his burden. First, Porterfield has not demonstrated his partner is incapacitated. Porterfield did not provide the Court with any medical records to verify his partner's medical conditions. For that reason alone, the Court could find he did not meet his burden of establishing an extraordinary and compelling circumstance. Courts in this circuit have routinely denied compassionate release to defendants seeking to care for ill relatives where the defendant does not produce "verifiable medical documentation" showing the relative needing care is actually incapacitated. *See United States v. McHugh*,

17

No. 21-CR-0063, 2024 WL 2319814, at *4 (M.D. La. May 22, 2024) (quoting *United States v. Barrios*, No. 20-CR-18381, 2022 WL 7265985, at *4 (W.D. Tex. Sept. 27, 2022)); *see also, e.g., United States v. Duggins*, No. 18-CR-1061, 2021 WL 5449642, at *4-5 (S.D. Tex. Nov. 22, 2021); *United States v. Williams*, No. 18-CR-0291, 2021 WL 1865005, at *3 (N.D. Tex. May 10, 2021) ("Williams does not provide evidence to substantiate his allegations . . . .").

Moreover, even if the Court were to accept the allegations regarding his partner's medical conditions, those statements do not establish his partner's incapacitation. Porterfield asserts his partner's medical conditions prevent her from "driv[ing] long distances or travel[ing]" and cause her to "often sleep[] 32-40 hours consecutively." Record Document 43 at 14. His partner similarly claims she cannot travel long distances because of her conditions and that her depression makes it difficult for her to eat, sleep, or get out of bed. *See* Record Document 47 at 2. While Porterfield's partner's medical conditions appear serious, the fact that she may not be able to travel long distances or that her depression occasionally interferes with her daily life does not suggest she is incapacitated. Put differently, Porterfield has not demonstrated his partner's medical conditions render her unable to carry on any self-care and have totally confined her to a bed or chair. Thus, Porterfield has not demonstrated his partner is incapacitated.

Second, even if the Court assumes *arguendo* Porterfield's partner is incapacitated, Porterfield has failed to demonstrate he is the only available caregiver for his partner. Porterfield states his partner is currently receiving treatment from Veterans Affairs for her diabetes, post-traumatic stress disorder, depression, and bipolar disorder. *See* Record

Document 43 at 14. He does not explain how this treatment is inadequate or how his partner needs additional treatment only he can provide. Porterfield likewise does not address why Stephen Porterfield or other family members, either his partner's or his own, cannot act as his partner's caregiver. Thus, Porterfield has not demonstrated he is the only available caregiver. *See United States v. Lopez*, No. 23-50404, 2024 WL 244935, at *1 (5th Cir. Jan. 23, 2024) (affirming denial of the defendant's compassionate release motion where "he failed to demonstrate that his parents were seriously in need of his care insofar as his parents were 'far from elderly,' he failed to explain why his other siblings could not care for his parents, and he failed to allege the death or incapacitation of any current caretaker").

In sum, Porterfield has not met his burden of demonstrating that his partner's medical conditions are extraordinary and compelling circumstances warranting relief. Therefore, this claim under § 3582(c)(1)(A) fails.

### iv. Victim of Abuse During Custody

Porterfield argues the abuse he has suffered at the prison warrants compassionate release. *See* Record Document 43 at 8, 20. More specifically, he contends he "has suffered physical and verbal abuse since he has been incarcerated and no matter what he does, he cannot escape it and the prison does nothing about the abuse." [7] *Id.* at 8. The physical abuse appears to stem from "beatings by other inmates." *Id.* at 20.

---

[7] Porterfield also alleges a prison employee threw away his deceased mother's letters. *See* Record Documents 62 at 2-4 & 66 at 6-8. This reason does not amount to abuse because it did not cause serious bodily injury. Further, although the revised Guidelines permit courts to consider "other reasons" a sentence reduction might be justified, *see*

The Guidelines provide that extraordinary and compelling circumstances are present for victims of abuse under the following circumstances:

> (4) Victim of Abuse.--The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:
> . . .
>> (B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);
>
> that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.
>
> For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

U.S.S.G. § 1B1.13(b)(4).

Although the Court recognizes and empathizes with the difficulties Porterfield faces, he has not met his burden of showing he is entitled to relief under this provision. First, Porterfield has not shown that any abuse resulted in "serious bodily injury." *Id.* U.S.S.G. § 1B1.1(1)(M) defines serious bodily injury as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." Porterfield has not presented the Court with any defined injury for its consideration, making the determination of whether any such injury was a serious bodily injury impossible. While he alludes to abuse by other inmates, his motion is devoid of any

---

U.S.S.G. § 1B1.13(b)(5), this reason is not similar in gravity to the enumerated circumstances.

allegation about how that abuse affected him physically. As such, Porterfield has not met his burden of showing he suffered a serious bodily injury because of abuse.

Second, Porterfield has presented the Court with no evidence suggesting that any abuse "was committed by, or at the direction of a correctional officer, an employee or contractor of the [BOP], or any other individual who had custody or control over" him. U.S.S.G. § 1B1.13(b)(4). Indeed, the abuses Porterfield identifies were committed by inmates, and Porterfield does not allege those inmates were directed by the relevant persons to commit that abuse. *See United States v. Bravo-Escalera*, No. 19-CR-0285, 2025 WL 1668212, at *11 (E.D. Tex. June 12, 2025) (finding Defendant did not meet his burden because his "motion fails to show that any instance of abuse occurred at the hands of a correctional officer, employee or contractor of the BOP, nor any other individual having custody or control over Defendant"); *United States v. Adams*, No. 20-CR-260-01, 2025 WL 369581, at *1 (W.D. La. Jan. 31, 2025) ("[Defendant's] allegations do not meet these criteria as his attacker was a fellow inmate.").

Finally, Porterfield has not shown that any misconduct was "established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding." U.S.S.G. § 1B1.13(b)(4). While this requirement may be excused where proceedings are unduly delayed or the defendant is in imminent danger, Porterfield has made no such allegations here. Thus, Porterfield has not met his burden of satisfying this requirement.

In sum, Porterfield has not established abuse that would constitute an extraordinary and compelling circumstance justifying a reduction of sentence. Therefore, this claim under § 3582(c)(1)(A) fails.[8]

### v. Unusually Long Sentence

Porterfield argues a sentencing disparity exists in his case that warrants compassionate release. *See* Record Document 43 at 15-16. He lists several individuals and contends those individuals "were sentenced to the same charge" but "received significantly less time than him." *See id.* at 16. U.S.S.G. § 1B1.13(b)(6) provides:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(6). Thus, to be eligible for relief under this category, a defendant must show that some change in the law has created a gross disparity between the sentence he received and the sentence he would receive if sentenced today.

Porterfield has not made any such showing here. Notwithstanding the fact that Porterfield has not served at least ten years of his term of imprisonment, he has not identified any change in the law that creates a gross disparity in *his* sentence. The basis for his claim is that a sentencing disparity exists between his sentence and others

---

[8] If Porterfield intended to raise an independent civil action premised on the purported abuse, he would need to initiate any such action through a formal civil complaint in the proper forum and venue.

convicted of the same charge, but the Guidelines do not suggest relief is available for defendants who argue there is a disparity between their sentence and other defendants convicted of crimes of the same type. Therefore, the Court finds Porterfield has not demonstrated he is entitled to relief based on an unusually long sentence, and this § 3582(c)(1)(A) claim fails.[9]

### vi. Other Reasons

The remaining grounds for compassionate release raised by Porterfield do not fit within the enumerated extraordinary and compelling circumstances discussed *supra*. The Court has divided the remaining claims into two categories. First, the Court grouped together claims related to his conviction and sentence, which include (1) diminished capacity, (2) his childhood trauma and learning disabilities, (3) failure to place him in a drug treatment facility, (4) aberrant behavior, (5) SPARC-13 factors, (6) ineffective assistance of counsel, (7) cooperation, and (8) involuntary guilty plea. Second, the Court grouped together claims related to his current incarceration which include (1) the BOP's denial of his First Step Act rights, (2) prison conditions, (3) the BOP's violation of his religious rights, and (4) the BOP preventing his access to prison programming and educational opportunities.

---

[9] Additionally, that Porterfield's sentence is longer than other defendants convicted of drug-related crimes is not a reason that this Court considers to be extraordinary nor compelling under U.S.S.G. § 1B1.13(b)(5). Indeed, the Court granted a downward variance from Porterfield's assigned Guidelines range, and the Court carefully selected its sentence after considering the 18 U.S.C. § 3553(a) sentencing factors. *See* Record Documents 36 & 37 at 2.

U.S.S.G. § 1B1.13(b)(5) permits a district court to consider "other reasons" a reduction of sentence might be justified where the defendant alleges circumstances that are "similar in gravity" to the defendant's medical condition, age, family circumstances, or abuse. The Court will first determine whether these claims are cognizable as "other reasons" that could justify relief under § 3582(c)(1)(A). If not, the Court will alternatively consider whether Porterfield may properly raise those claims in this Court through another avenue.

### 1. Claims Related to Porterfield's Conviction and Sentence

This subsection addresses Porterfield's claims that (1) his childhood trauma, mental illness, and substance abuse should have been considered as mitigating factors because they diminished his capacity; (2) the Court did not consider placing him in a drug treatment facility instead of sentencing him to prison; (3) the Court should have departed downward because the instant offense was aberrant behavior; (4) the Court did not consider the SPARC-13 factors at sentencing; (5) his counsel was ineffective; (6) the Government pressured him to cooperate; and (7) his guilty plea was involuntary because (a) the Government coerced that plea and (b) Porterfield did not have the capacity to accept a plea deal. *See* Record Document 43.

The Court notes these claims would ordinarily be raised under 28 U.S.C. § 2255 because they address the validity of his conviction and sentence. Under 28 U.S.C. § 2255, a prisoner may move to vacate, set aside, or correct a sentence imposed by a federal court if: (1) the sentence "was imposed in violation of the Constitution or laws of the United States[;]" (2) "the court was without jurisdiction to impose such sentence[;]" (3)

"the sentence was in excess of the maximum authorized by law[;]" or (4) the sentence "is otherwise subject to collateral attack." *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012); 28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Young*, 77 F. App'x 708, 709 (5th Cir. 2003) (citing *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).

Here, Porterfield does not rely on § 2255 and instead seeks relief under § 3582(c)(1)(A) for his claims challenging his conviction and sentence. But the Fifth Circuit has expressly held that the habeas-channeling rule forecloses using § 3582(c)(1)(A) "to challenge the legality or the duration of [a defendant's] sentence." *United States v. Escajeda*, 58 F.4th 184, 187 (5th Cir. 2023). Put differently, where a claim would be cognizable under § 2255 or should be raised on direct appeal, that claim is not cognizable under § 3582(c)(1)(A). *See id.* at 188.

Therefore, Porterfield's claims challenging the legality and duration of his sentence "are the province of direct appeal or a § 2255 motion, not a compassionate release motion." *Id.* at 187. For that reason, the Court could deny his § 3582 claims premised on those grounds. However, the Supreme Court recently granted a petition for a writ of certiorari in *Fernandez v. United States*, No. 24-556 (May 27, 2025), to decide whether extraordinary and compelling circumstances can include grounds for a vacatur of sentence under § 2255. Out of an abundance of caution that the *Fernandez* Court may decide § 2255 grounds can entitle a prisoner to compassionate release, the Court will

25

examine whether Porterfield's proffered grounds for relief under § 2255 entitle him to relief under § 3582(c)(1)(A) generally. The Court will additionally examine whether the proffered reasons independently constitute "other reasons" that are extraordinary and compelling under U.S.S.G. § 1B1.13(b)(5).

Ultimately, as will be discussed more in depth *infra*, the Court finds that none of the reasons proffered here are extraordinary and compelling. Any § 2255 claims premised on Porterfield's arguments are wholly without merit and thus could not theoretically serve as the basis for any § 3582(c)(1)(A) claims.[10] Nor would they independently constitute "other reasons" that are extraordinary and compelling under U.S.S.G. § 1B1.13(b)(5). Therefore, regardless of whether the Court construes these claims as § 2255 or § 3582(c)(1)(A) claims, Porterfield would not be entitled to relief on these grounds. Each argument will be addressed in turn.

### a. Diminished Capacity

Porterfield contends the Court's failure to downwardly depart based on diminished capacity warrants compassionate release. *See* Record Document 43 at 11-12. To begin, any § 2255 claim premised on this alleged error would be meritless. Challenges to the Court's application of the Guidelines are not cognizable under § 2255. *See Vaughn*, 955 F.2d at 368; *United States v. Birtha*, No. 7-CR-20052(02), 2015 WL 893267, at *12 (W.D.

---

[10] Any § 2255 claims are also plainly untimely. Porterfield's judgment of conviction became final in 2020. See *Aguillon v. Lumpkin*, No. 23-CV-0266, 2024 WL 2305263, at *9 (S.D. Tex. May 2, 2024) (explaining judgment becomes "final upon the expiration of his time to appeal"). Porterfield filed the instant motion over four years later. Therefore, his motion is untimely under § 2255(f)(1). As presented, no other timeliness provision applies.

La. Feb. 27, 2015) ("It is . . . well-settled that issues concerning the application of the guidelines are not cognizable in a § 2255 motion."). Therefore, Porterfield's claim that this Court failed to downwardly depart is not a valid ground for § 2255 relief and thus could not theoretically constitute an extraordinary and compelling reason under § 3582(c)(1)(A).

The Court similarly finds that the failure to depart is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). Porterfield argues his "substance abuse, mental illness, and childhood trauma"[11] rendered him "unable to achieve the mental state required to commit the crime in question," and the Court should have consequently found that "[d]iminished capacity was a mitigating factor." Record Document 43 at 11. U.S.S.G. § 5K2.13 provides for a downward departure based on a defendant's diminished capacity if:

> (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

---

[11] Porterfield has a separate section in his motion entitled "Mr. Porterfield's Childhood Trauma and Learning Disabilities." Record Document 43 at 3-6. In this section, Porterfield asserts that his "history of childhood trauma . . . has adversely affected him in many ways" and that ADHD, which he was diagnosed with as a child, "has been proven to lead to criminal activity." *Id.* at 3. To the extent Porterfield is arguing his childhood trauma and learning disabilities are an independent basis for relief, the Court finds these reasons are not similar in gravity to the enumerated circumstances and thus do not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5).

U.S.S.G. § 5K2.13. The application notes define "significantly reduced mental capacity" to mean that "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13 cmt. 1.

The reasons proffered by Porterfield would not warrant a downward departure. The Court may not depart downward if "the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13. Thus, the Court could not have granted a downward departure based on Porterfield allegedly being under the influence of drugs at the time of the offense.

His remaining arguments for any downward departure include his substance abuse generally, mental illness, and childhood trauma. Record Document 43 at 11. Porterfield cites several studies suggesting that childhood trauma and ADHD have been proven to lead to criminal activity. *See id.* at 3-6. In a later section of his motion, Porterfield contends his ADHD prevents him from "utiliz[ing] common sense" and causes him to "easily . . . get into trouble" and "act[] without thinking." *Id.* at 15. He also contends he suffers from severe depression and that his anxiety causes him to bite and clip his fingernails and toenails to the quick. *See id.* at 7-8, 15.

The proffered evidence does not suggest Porterfield was operating under a significantly reduced mental capacity when he committed the instant offense. Although Porterfield contends his ADHD often causes him to act without thinking, the evidence related to the instant offense demonstrates Porterfield had the capacity to organize and

28

run a six-month long distribution scheme.[12] *See* Record Documents 27-2 & 38. Thus, Porterfield fails to demonstrate his ADHD affects him to such an extreme that it significantly impaired his ability to understand the wrongfulness of his behavior, exercise reason, or to control behavior he knows is wrongful. Similarly, Porterfield has not shown how his other mental illnesses, his childhood trauma, and general substance abuse caused him to suffer from a significantly reduced mental capacity.[13]

In sum, any § 2255 or § 3582(c)(1)(A) claim premised on this Court's alleged failure to grant a downward departure based on diminished capacity is clearly without merit, and any such claim raised in Porterfield's motion fails.

### b. Drug Treatment Facility

Porterfield argues the Court did not consider admitting him to a drug treatment facility in lieu of a term of imprisonment despite his being "under the influence of illegal drugs at the time of the instant offense." Record Document 43 at 6. To begin, any § 2255 claim premised on this alleged error would be meritless. Porterfield does not explain how this Court's decision to sentence him to a term of imprisonment violated the Constitution

---

[12] Porterfield admitted to "selling illegal narcotics for about six months" and using the "dark web" to purchase illegal drugs. Record Document 38 ¶¶ 9, 12. He began by "purchasing a small amount of methamphetamine to test for quality," then began to order "personal use amounts," and then "began purchasing distribution amounts of methamphetamine." *Id.* "[S]ometime around March 2019, he upped his orders to approximately 8 ounces per week." *Id.* Porterfield further "reported reading reviews and comparing [vendor] prices" on the "'dark web' market places." *Id.* ¶ 15.

[13] The Court notes that it expressly considered Porterfield's drug addiction when selecting a sentence below his Guidelines range. *See* Record Document 37 at 4.

or the laws of the United States or is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255. And, indeed, any such argument would be wholly without merit.

Porterfield was subject to a statutory minimum term of imprisonment of ten years. "Absent a statutory exception, a district court lacks authority to impose a sentence below this minimum." *United States v. Sealed Appellee*, 887 F.3d 707, 709 (5th Cir. 2018). However, a district court still retains discretion to impose a sentence within these statutory limits "based on appropriate consideration of all of the factors listed in § 3553(a)," so long as its determination of a sentence is reasonable. *See Pepper v. United States*, 562 U.S. 476, 490 (2011).

That is exactly what the Court did here. After considering the § 3553(a) factors, the Court varied downwards from the Guidelines range and sentenced Porterfield to 130 months imprisonment. *See* Record Documents 36 & 37. In selecting that sentence, the Court specifically considered Porterfield's drug addiction. *See* Record Document 37 at 4. In light of the statutory minimum and the § 3553(a) factors, the Court plainly did not err in sentencing Porterfield to a term of imprisonment. Nothing in the Court's decision-making suggests Porterfield's conviction or sentence violates the Constitution or the laws of the United States or is otherwise subject to collateral attack.

Further, to the extent Porterfield is arguing the Court should have sentenced him to a term of imprisonment at an inpatient treatment facility, such contention is also without merit. "The Bureau of Prisons has the sole authority to designate a prisoner's place of incarceration." *United States v. Chaney*, 823 F. App'x 278, 279 (5th Cir. 2020); *see also* 18 U.S.C. § 3621(b) ("The Bureau of Prisons shall designate the place of the

prisoner's imprisonment."). Although this Court may recommend a specific placement, the Court would not have recommended allowing Porterfield to serve the entirety of his sentence at an inpatient treatment facility. Participation in RDAP and/or any other available drug treatment programs, which the Court recommended, is more suitable in light of the factual record.

In sum, any § 2255 claim premised on this Court's alleged failure to consider admitting Porterfield to a drug treatment facility in lieu of a term of imprisonment is meritless and thus could not theoretically constitute an extraordinary and compelling reason under § 3582(c)(1)(A). For the same reasons, the Court also finds that this alleged failure is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). Therefore, any § 2255 or § 3582(c)(1)(A) claim premised on this basis is clearly without merit, and any such claim raised in Porterfield's motion fails.

### c. Aberrant Behavior

Porterfield contends the Court should have departed downward based on aberrant behavior. *See* Record Document 43 at 10-11. To begin, any § 2255 claim premised on this alleged error would be meritless. Challenges to the Court's application of the Guidelines are not cognizable under § 2255. *See Vaughn*, 955 F.2d at 368; *Birtha*, 2015 WL 893267, at *12. Therefore, Porterfield's claim that this Court failed to downwardly depart on this basis is not a valid ground for § 2255 relief and could not theoretically constitute an extraordinary and compelling reason under § 3582(c)(1)(A).

The Court further finds that the alleged failure to depart is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). U.S.S.G. § 5K2.20 provides that a downward departure may be warranted "if the defendant committed a single criminal occurrence or single criminal transaction that (1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20(b).

Even assuming *arguendo* Porterfield meets these requirements, he would not have been eligible for a downward departure under U.S.S.G. § 5K2.20. The Guidelines specifically provide that the Court may not depart downward under this provision if the defendant's conviction was a serious drug trafficking offense. *See* U.S.S.G. § 5K2.20(c)(3). A "serious drug trafficking offense" is defined as "any controlled substance offense under title 21, United States Code . . . that provides for a mandatory minimum term of imprisonment of five years or greater . . . ." U.S.S.G. § 5K2.20 cmt. 1. As explained *supra*, Porterfield was convicted of a controlled substance offense under Title 21, and he was subject to a mandatory minimum term of imprisonment of ten years. Therefore, he would have been ineligible for a downward departure under this Guidelines provision. Further, Porterfield would also have been ineligible because he has "(A) more than one criminal history point, as determined under Chapter Four . . . before application of subsection (b) of § 4A1.3." U.S.S.G. § 5K2.20(c); Record Document 38 ¶¶ 33-44 (detailing Porterfield's criminal history).

In sum, any § 2255 or § 3582(c)(1)(A) claim premised on this Court's alleged failure to grant a downward departure based on aberrant behavior is clearly without merit, and any such claim raised in Porterfield's motion fails.

### d. SPARC-13 Factors

In his most recent supplemental motion, Porterfield argues his "personal growth, rehabilitation, and readiness for reentry are supported by the [SPARC-13 factors] because "[e]ach of the 13 factors applies to him and none were taken into consideration." Record Document 66 at 8. It is not clear from his motion whether Porterfield is arguing the Court failed to take these factors into consideration at his sentencing, the Court has failed to take these factors into consideration while he is in custody, or the Court should take these factors into consideration when deciding his motion for compassionate release. Regardless, under any interpretation, Porterfield's claim is meritless.

Any § 2255 claim premised on this alleged error would be meritless. The BOP uses the SPARC-13 factors "for assessing the prisoner's needs" and recidivism risk. *Brenneman v. Salmonson*, No. 22-CV-007, 2025 WL 957216, at *3 (E.D. Tex. Feb. 25, 2025). Porterfield does not explain how this Court's failure to take the SPARC-13 factors into account at any point constitutes an error. Nor could he. The Court has no obligation to consider these factors. Instead, for purposes of both sentencing and compassionate release, the Court considers the § 3553(a) factors, which are separate from the SPARC-13 factors. Thus, the Court's alleged failure to consider the SPARC-13 factors at any point is neither unconstitutional nor subject to collateral attack, and any associated § 2255 claim is wholly without merit. For the same reasons, the Court also finds that this alleged

failure is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). Therefore, any § 2255 or § 3582(c)(1)(A) claim premised on this basis is clearly without merit, and any such claim raised in Porterfield's motion fails.

### e. Ineffective Assistance of Counsel

Porterfield contends his counsel was ineffective because she allegedly: (a) "refused to present any medical records to the court, which might have placed [him] in a [treatment facility] instead of prison; (b) deprived Porterfield of the opportunity to "establish[] an important mitigating circumstance when he was not afforded the opportunity to present testimony to the court during portions of the proceedings[;]" (c) did not inform the Court that Porterfield "was under the influence of illegal drugs at the time of the offense, which was the reason for the crimes" and "could have qualified him for an Inpatient Treatment Facility[;]" (d) did not request a mental evaluation of Porterfield; (e) "rushed this case to get it over and done with" and "never had any intention of helping [him][;]" (f) "basically bowed down to the Prosecutor and did not object to anything[;]" and (g) did not "obtain the 2 point reduction for [Porterfield] for this being his first offense." Record Document 43 at 12-13. These claims clearly fall under § 2255, so the Court begins its inquiry by determining whether he would be entitled to relief under that statute.

To state a successful claim of ineffective assistance of counsel, the defendant must demonstrate two things: (1) counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687

(1984). Failure of the defendant to establish either prong will result in a finding that counsel's performance was constitutionally effective. *See id.*; *see also Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997). When determining whether counsel's performance was deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). Courts must be "highly deferential" to counsel's performance and make every effort "to eliminate the distorting effects of hindsight." *Id.* To establish prejudice, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Porterfield's ineffective assistance of counsel claims are without merit. The Court begins with Porterfield's contentions related to an inpatient treatment facility and diminished capacity. He argues the Court did not place him in an inpatient treatment facility because his counsel (a) did not present any medical records to the Court and (b) did not inform the Court that Porterfield was under the influence of illegal drugs when he committed the instant offense. *See* Record Document 43 at 12-13. Notably, Porterfield does not identify any medical records that should have been presented to the Court for consideration, and he does not explain what those medical records would show. Further, as explained *supra*, Porterfield was subject to a mandatory minimum term of

imprisonment, and the BOP has the sole authority to determine the placement of that term of imprisonment.

In light of these facts, any objection or additional evidence presented by Porterfield's counsel would have failed in convincing the Court to place Porterfield in an inpatient treatment facility. As explained *supra*, Porterfield's arguments that he should have been placed in such a facility and that he should have received a downward departure based on diminished capacity fail. Any arguments by Porterfield's counsel to place him in an inpatient facility or to grant a downward departure based on diminished capacity would have been meritless. Therefore, Porterfield's ineffective assistance of counsel claims related to his placement in an inpatient treatment facility or diminished capacity fail. *See Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).

Next, Porterfield contends his counsel deprived him of the opportunity to testify in order to "establish[] an important mitigating circumstance." Record Document 43 at 12. But Porterfield wholly fails to identify what his testimony would entail and what mitigating circumstance he was unable to present to the Court for consideration. Without such evidence, Porterfield cannot overcome the presumption that his counsel's performance comported with sound trial strategy. *See Strickland*, 466 U.S. at 689. A conclusory allegation is insufficient to carry that burden for him. Therefore, Porterfield's ineffective assistance of counsel claim related to his inability to testify fails.

The Court reaches a similar conclusion as to Porterfield's claim that his counsel did not request a mental evaluation. *See* Record Document 43 at 13. Porterfield claims this evaluation was warranted "due to his prior diagnoses of mental illness." *Id.* However, Porterfield does not explain how these evaluations would have changed either his conviction or sentence. And, as explained *supra*, the information Porterfield provided in support of his motion does not suggest he would have been eligible for any downward departure based on those diagnoses. As such, Porterfield fails to rebut the presumption that his counsel's decisions comported with sound trial strategy, and his claim fails. *Strickland*, 466 U.S. at 689.

The Court turns now to Porterfield's contentions that his counsel rushed his case, had no intention of helping him, and "basically bowed down to the Prosecutor and did not object to anything." Record Document 43 at 13. Once again, Porterfield provides the Court with no evidence to support these conclusory allegations. The Court further notes that Porterfield's counsel did, in fact, file objections on his behalf. *See* Record Document 29. Porterfield's counsel also filed a pre-sentencing memorandum on his behalf, which further explained objections to the PSR, requested a 130-month sentence, and detailed Porterfield's struggles with addiction. *See* Record Document 31. Finally, upon motion by Porterfield's counsel, the Court granted a downward variance and imposed the requested 130-month sentence.[14] *See* Record Documents 36 & 37. The factual record makes clear that Porterfield's counsel acted as a zealous advocate on his behalf. Porterfield's conclusory allegations fail to demonstrate any deficient performance of his counsel.

---

[14] The Government objected to this downward variance. *See* Record Document 37 at 3.

Therefore, Porterfield's ineffective assistance of counsel claims premised on his counsel's allegedly rushing his case, not wanting to assist him, and not objecting at sentencing all fail.

Finally, the Court turns to Porterfield's argument that his counsel did not "obtain the 2 point reduction for [Porterfield] for this being his first offense." Record Document 43 at 13. Part B, Subpart 1 of Amendment 821, which authorizes a two-offense-level decrease for certain zero-point offenders, became effective after Porterfield was sentenced. Porterfield's counsel cannot be ineffective for failing to obtain a reduction that did not yet exist. In any event, because Porterfield is ineligible for relief under Amendment 821 as explained *supra*, any argument by Porterfield's counsel seeking relief under that provision would have been meritless. Therefore, Porterfield's ineffective assistance of counsel claim premised on his counsel's failure to obtain a two-point reduction under Amendment 821 fails.

In sum, any § 2255 claim premised on ineffective assistance of counsel is meritless and thus could not theoretically constitute an extraordinary and compelling reason under § 3582(c)(1)(A). For the same reasons set forth *supra*, the Court also finds his counsel's alleged failures are not similar in gravity to any of the enumerated circumstances and thus do not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). Therefore, any § 2255 or § 3582(c)(1)(A) claim premised on this basis is clearly without merit, and any such claim raised in Porterfield's motion fails.

### f. Cooperation

Porterfield contends the Government pressured him to cooperate, but he was unable to provide any of the requested names because he received death threats. *See* Record Document 43 at 13. The Court cannot determine what relief Porterfield seeks based on this statement, and it is equally unclear how Porterfield contends this allegation would affect his underlying conviction and sentence. Regardless, the Court notes that Porterfield's plea agreement expressly disclaims the existence of a cooperation agreement. *See* Record Document 28 (stating there was "no agreement regarding cooperation" between Porterfield and the Government). In light of his plea agreement and the ambiguity of Porterfield's argument, the Court finds Porterfield has not demonstrated his entitlement to relief under either § 2255 or § 3582(c)(1)(A), and any related claims in his motion fail.

### g. Guilty Plea

Porterfield contends his guilty plea was involuntary for two reasons. *See* Record Document 43 at 13. First, Porterfield argues he "should have never been allowed to agree to any type of plea due to his mental health." *Id.* Second, Porterfield argues the Government forced and/or coerced him to plead guilty by "falsely telling him that they would charge his dying mother as an accessory." *Id.* The Fifth Circuit has explained that "[t]he critical issue in determining whether a plea was voluntary and intelligent is 'whether the defendant understood the nature and substance of the charges against him.'" *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995) (quoting *Taylor v. Whitley*, 944 F.2d 325, 329 (5th Cir. 1991)). A defendant who affirms with sworn testimony that his guilty plea is

voluntary but later contends his guilty plea was involuntary carries a "heavy burden." *United States v. Diaz*, 733 F.2d 371, 374 (5th Cir. 1984) (quoting *United States v. Nuckols*, 606 F.2d 566 (5th Cir. 1979)). To carry that burden, the defendant must show his plea was "so much the product of . . . misunderstanding, duress, or misrepresentation by others as to make the guilty plea a constitutionally inadequate basis for imprisonment." *Id.* (quoting *Blackledge v. Allison*, 431 U.S. 63, 75 (1977)).

As explained extensively *supra*, Porterfield's proffered evidence regarding his mental health does not suggest incapacity, and it likewise fails to demonstrate that he lacked capacity to enter into a plea agreement. Additionally, the Court questioned Porterfield as to his competency, including inquiring as to whether Porterfield had any mental problems that would limit his ability to understand what was happening, and found him competent to plead. The Court additionally questioned Porterfield as to whether anyone threatened, forced, or coerced him to plead guilty, and he affirmed no one had. Porterfield's after-the-fact conclusory allegations to the contrary are insufficient to rebut his sworn testimony supporting the voluntariness of his guilty plea.

In sum, any § 2255 claim premised on his guilty plea allegedly being involuntary is meritless and thus could not theoretically constitute an extraordinary and compelling reason under § 3582(c)(1)(A). For the same reasons set forth *supra*, the Court also finds that this alleged failure is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). Therefore, any § 2255 or § 3582(c)(1)(A) claim premised on this basis is clearly without merit, and any such claim raised in Porterfield's motion fails.

In conclusion, the Court finds that Porterfield's claims related to (1) diminished capacity, (2) his childhood trauma and learning disabilities, (3) failure to place him in a drug treatment facility, (4) aberrant behavior, (5) SPARC-13 factors, (6) ineffective assistance of counsel, (7) cooperation, and (8) involuntary guilty plea are not cognizable under § 3582(c)(1)(A). Further, as explained *supra*, these claims are also meritless under § 2255. Therefore, regardless of whether the Court construes these claims as § 2255 or § 3582(c)(1)(A) claims, Porterfield would not be entitled to relief on these grounds, and any such related claims raised in his motion fail.

### 2.  Claims Related to Porterfield's Current Incarceration

This subsection addresses Porterfield's claims related to his current incarceration, including the alleged (1) denial of his First Step Act rights, (2) prison conditions, (3) violation of his religious rights, and (4) lack of access to prison programming and educational opportunities. The Court begins with Porterfield's argument that release is warranted because his rights under the First Step Act are allegedly being violated. *See* Record Documents 43 at 18-20 & 62 at 1-2.

Porterfield first argues the BOP is denying his First Step Act rights because he is being housed over 1,000 miles from his home. *See* Record Document 43 at 18. Seemingly congruent with this contention is a request to be transferred to a lower security prison. *See* Record Document 62 at 2. The Court previously explained to Porterfield that it cannot order the BOP to move him to a different location. *See* Record Document 52. "The Bureau of Prisons has the sole authority to designate a prisoner's place of incarceration." *Chaney*, 823 F. App'x at 279; *see also* 18 U.S.C. § 3621(b). "The Bureau of Prisons is given this

responsibility because the executive branch and not the judicial branch is responsible for administering sentences." *United States v. Voda*, 994 F.2d 149, 152 (5th Cir. 1993). As such, the Court cannot grant Porterfield's requests to be transferred to a different prison. The Court further finds that Porterfield's placement in a medium-security prison over 1,000 miles from his home is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5).[15]

Porterfield next argues the BOP is denying his First Step Act rights by allegedly failing to accurately count time credits earned through programming. *See* Record Document 62 at 1-2. The Court construes this argument as asserting a violation of 18 U.S.C. § 3632(d)(4)(A), which provides that eligible prisoners may earn "10 days of time credits for every 30 days of successful participation in evidence-based recidivism reduction programming or productive activities" and an additional 5 days if the BOP determines that a prisoner is "at a minimum or low risk for recidivating." 18 U.S.C. § 3632(d)(4)(A). Porterfield claims he has "been programing the entire time," but the BOP "put a stipulation in it that is not supposed to be there" by requiring "[l]ow [r]ecidivism points to apply the 15 days extra." Record Document 62 at 1.

---

[15] Porterfield may also be arguing that the lack of a visitor in several years is an extraordinary and compelling circumstance. *See* Record Document 43 at 14. To the extent this is an accurate reading of his motion, the Court would find relief not warranted because it is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5).

Porterfield does not provide the Court with any evidence suggesting the BOP's calculation of his time credits is inaccurate.[16] But even if the Court were to assume his contention is accurate, the Court finds that the denial of those credits is not similar in gravity to any of the enumerated circumstances and thus does not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). *See Bravo-Escalera*, 2025 WL 1668212, at *11 ("Regardless of whether the BOP owes Defendant [earned time credits] or not, the denial of [earned time credits] is not an extraordinary and compelling reason for compassionate release.").

Further, the proper avenue for a claim regarding the calculation of time credits is a claim under 28 U.S.C. § 2241. *See United States v. Tolbert*, No. 4-CR-0278, 2021 WL 209609, at *1 (N.D. Tex. Jan. 6, 2021) ("The proper method for challenging the execution of a sentence and for contesting the calculation of a sentence by the BOP is through a *habeas corpus* petition under 28 U.S.C. § 2241."). "To entertain a § 2241 habeas petition, the district court must, *upon the filing of the petition*, have jurisdiction over the prisoner or his custodian." *United States v. Brown*, 753 F.2d 455, 456 (5th Cir. 1985) (per curiam) (emphasis added); *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004) ("District courts are limited to granting habeas relief 'within their respective jurisdictions.'" (quoting 28 U.S.C.

---

[16] Porterfield provides some evidence that he has participated in programming at the prison, *see e.g.,* Record Documents 61-1 at 4 & 62-1 at 4, as well as unsupported allegations that he has participated in other programs. *See* Record Document 43 at 16. However, he does not provide evidence supporting the number of days spent in programming nor does he explain whether his participation in those programs was successful. Further, he does not provide the Court with either the BOP's current calculation of time credits or his estimate of what the proper calculation should be. Finally, Porterfield does not explain how his disciplinary record, which indicates he lost time credits, affects the calculation. *See* Record Document 58-2.

§ 2241(a)). Put differently, "Section 2241 petitions must be filed in the district wherein the prisoner is incarcerated." *McNeil v. Keffer*, No. 9-CV-0166, 2009 WL 4423713, at *1 (W.D. La. Dec. 2, 2009) (citing *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000)).

Ordinarily, the Court would construe Porterfield's *pro se* motion as seeking a writ of habeas corpus. However, the Court cannot do so here because it would not have jurisdiction over a § 2241 claim. At the time Porterfield filed the instant motion, he was housed in FCI Florence, which is located in Florence, Colorado. *See* Record Document 43. As of the drafting of this ruling, Porterfield remains at FCI Florence. Porterfield consequently was not within the Court's respective jurisdiction upon the filing of the instant motion, and this Court accordingly does not, and would not, have jurisdiction over any § 2241 petition. Therefore, the Court cannot construe his § 3582(c)(1)(A) motion as seeking relief under § 2241 because it lacks jurisdiction to grant relief under that provision. If Porterfield wishes to seek § 2241 relief on this basis, he must file such claim in a district of proper jurisdiction.

Next, the Court turns to Porterfield's arguments regarding prison conditions. Porterfield argues that prison conditions at his previous and current facility warrant compassionate release. *See id.* at 20-21. Porterfield's motion describes conditions at FCI Beaumont, where he was previously incarcerated, and FCI Florence, where he is currently incarcerated. *See id.* As to Beaumont, Porterfield points to the lack of air conditioning, heat, and plumbing on multiple occasions, describes mold and rat infestations in the kitchen and mold in the showers, and complains of excessive lockdowns. *See id.* As to Florence, Porterfield complains about the lack of plumbing, heat, and air conditioning.

*See id.* Porterfield also describes witnessing "multiple beatings and killings during his incarceration." *See id.* at 20. The Court has reviewed his contentions and finds these conditions are not similar in gravity to any of the enumerated circumstances and thus do not constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5).[17]

Next, Porterfield contends the BOP has violated his religious rights and "denied [him] access to religious support." *See* Record Document 66 at 2-3, 4. However, Porterfield has not provided the Court with any evidence to support his claim, making it impossible for the Court to evaluate whether such denial would constitute "other reasons" under U.S.S.G. § 1B1.13(b)(5). The Court further notes that Porterfield refers to the Religious Land Use and Institutionalized Persons Act to support relief. If Porterfield intended to raise a claim under that act, he must file an action on that basis in the proper forum and venue.

Finally, Porterfield contends the BOP has denied him access to "rehabilitation [and] programmatic needs." *Id.* at 3-4. However, once again, Porterfield has not provided the Court with any evidence to support his claim. In any event, "inability to participate in prison programs does not constitute an extraordinary and compelling reason for compassionate release." *United States v. Garcia*, No. 15-CR-0194, 2021 WL 3269774, *3 (N.D. Tex. July 30, 2021). Thus, even assuming *arguendo* Porterfield could demonstrate the BOP has somehow impeded his ability to participate in educational opportunities or

---

[17] If Porterfield intended to raise an independent civil action premised on the purported conditions, he would need to initiate any such action through a formal civil complaint in the proper forum and venue.

prison programming, the Court would find that such denial does not amount to "other reasons" warranting relief under U.S.S.G. § 1B1.13(b)(5).

In sum, the Court finds that Porterfield's claims related to (1) denial of his First Step Act rights, (2) prison conditions, (3) violation of his religious rights, and (4) lack of access to prison programming and educational opportunities are not cognizable under § 3582(c)(1)(A). Therefore, Porterfield is not entitled to relief on these grounds.

### vii.  Rehabilitation

Porterfield argues his rehabilitation and existence of a home plan entitles him to relief. *See* Record Document 43 at 16-18. Rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). But "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason. . . ." *Id.*; *see also United States v. Grimaldo*, No. 08-CR-107, 2022 WL 4126106, at *7 (E.D. Tex. Sept. 9, 2022) ("Although [defendant]'s behavior while incarcerated is commendable, it does not constitute an extraordinary and compelling reason for a sentence reduction."). Because Porterfield fails to demonstrate the existence of other extraordinary and compelling reasons warranting relief, the Court is prohibited from considering rehabilitation alone as a reason to justify compassionate release.[18]

In conclusion, none of the reasons Porterfield advances, considered individually or collectively, are sufficient to constitute extraordinary and compelling circumstances.

---

[18] The Court notes Porterfield has incurred four disciplinary infractions at FCI Florence, including the use of drugs and alcohol, disruptive conduct, being absent from assignment, and assaulting without serious injury. *See* Record Document 58-2.

Under the current Guidelines, the only cognizable circumstance raised by Porterfield is his rehabilitation, but this Court is prohibited from considering rehabilitation alone as a reason to justify compassionate release. Therefore, Porterfield is not entitled to compassionate release.[19]

### Conclusion

Having considered the motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) [Record Document 43], supplemental responses [Record Documents 56, 60, 61, 62, & 66], letters of reference [Record Documents 47, 48, 53, 57, 63, 64, 65, & 69], the oppositions filed by the Government [Record Documents 54 & 58], and applicable policy statements, **IT IS ORDERED** that Porterfield's motion [Record Document 43] is **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent Porterfield's motion [Record Document 43] can be construed as raising claims for relief under other statutes, as discussed *supra*, relief based on any such statutes is also **DENIED**.

**IT IS FURTHER ORDERED** that, to the extent Porterfield's supplemental responses [Record Documents 56, 60, 61, & 62] can be interpreted as raising claims for relief, such motions are **DENIED**.

---

[19] The Court pretermits a discussion on the 18 U.S.C. § 3553(a) factors because Porterfield did not demonstrate any extraordinary and compelling circumstances warranting relief.

**THUS DONE AND SIGNED** this 15th day of August, 2025.


_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE